## Moody v. Finkbine Lumber Co.

[84 South. 385. No. 21105.]

1. **Bills and Notes.** *Trade checks on their face providing against transfer do not violate statutes.*
   Trade checks providing on their face that they are not transferable do not violate section 4001, Code of 1906. There is nothing in this Code section which invalidates this sort of contract.

2. **Master and Servant.** *Law prohibiting trade check deals only with manufacturing companies.*
   Chapter 138, Laws of 1914, deals with manufacturing companies alone.
   Ethridge, J., dissenting.

Appeal from Circuit Court of Simpson County.
Hon. W. H. Hughes, Judge.

Suit by M. J. Moody against the Finkbine Lumber Company. From judgment for defendant, plaintiff appeals. Affirmed.

*Hilton & Hilton,* for appellant.

To begin with, we are mindful that this court has in the case of *Ovett Land & Lumber Co.* v. *Wimberly,* 68

S. R. 855, held that trade checks, which said on the face "Good for one dollar in merchandise, void if transferred," was not within the law merchant and suit could not be maintained uppon them because: 1st. The payee or second party of the contract is not stated; 2nd. No consideration is expressed; 3rd. No assignment in writing is made of the checks; 4th. No privity of contract between the parties in the suit. It will be noted that the first ground of decision in the case, *supra,* does nuv enter into the proposition here, because these trade checks named the payee or second pparty to the contract.

The third ground does not enter into the proposition nere for the reason that these checks were assigned, and the fourth ground does not enter into the proposition for the reason that the payee being named and he having assigned it to Moody, the privity of contract continues from the payee to the assignee, Moody, and privity to the parties of the suit is thus established.

Therefore, if the decision, *supra,* was an obstacle in the way of recovery in this case, then the only point to be argued would be that this court has seemed to have held that trade checks almost identical with this express no consideration and it would be necessary to show the consideration. Arguing this point for a moment we remind the court that the case, *supra,* was decided upon a declaration and a demurrer to the declaration. It is unnecessary to cite authority or argue that the consideration may always be shown. The case here comes to this court, not on a declaration and demurrer, but on a statement of an action and evidence. The evidence in this case shows that these trade checks were issued by the Finkbine Lumber Company to their employees for the convenience of their employees in consideration of labor done by their employees and in payment and exchange for the labor done by their employees. So in this case the consideration of these trade checks is established unless it be claimed that a few

dollars as donated had no consideration; but if this be true the court below still erred for the reason that it would not give judgment for the amount, the consideration of which was established. If we are correct in this there is no obstacle in the way of recovering in this case in the *Ovett case, supra.*

But the *Ovett case, supra,* in none of its phrases, affect the right of recovery now. It was decided by this court June 14, 1915, on a cause of action which arose on the 10th of September, 1910, and afterwards and which cause of action was tried in the courts below and appealed to the supreme court prior to the acts of the legislature approved March 28, 1914, which is chapter 138 of the Acts of 1914, page 181. And of course this court in its decision in June, 1915, did not apply the Acts of 1914 to the statement of facts arising before the passage of this act, as such action by this court is prohibited by the *ex post facto* section of the constitution. By the act above mentioned the legislature, section 2, these trade checks must be redeemed in cash by the Finkbine Lumber Company, which is a manufacturing corporation, in cash on or after the regular pay day and their failure to do so adds twenty-five per cent. as damages on the face value of the checks.

We hardly see how there can be any defense to the contention of the liability of the Finkbine Lumber Company in this case.

*Wells, May & Sanders,* for appellee.

A casual reading of the twenty pages of evidence and a cursory examination of the statute, will convince the court that the judgment of the court below is the only proper judgment which could have been rendered. The statute has exclusive application to "persons, firms, and corporations engaged in manufacturing."

Unless the evidence shows that the appellee was engaged in manufacturing, he has utterly failed to make out a *prima-facie* case, and we assert, without any fear of contradiction, that there is not a line or a syllable of evidence in the record to establish this essential fact upon which recovery must necessarily depend.

The court cannot know judicially that the Finkbine Lumber Company is engaged in manufacturing, and there is no proof to establish this fact unless it is contained in the name of the corporation. While a name may be indicative of the character of business a corporation conducts, it is not proof of that fact. The Jackson Lumber Company, a corporation domiciled at Jackson, Mississippi, is not engaged in manufacturing; it manufactures nothing; it simply conducts a lumber yard; buys and sells lumber, etc. We therefore, content ourselves with the familiar commonplace expression "there is nothing in a name." If this were the only question in this case, we would feel that it would be sufficient to warrant an affirmance of the judgment.

Second. Another fatal omission to present the necessary proof to make out a *prima-facie* case is want of consideration. The instrument sued on certainly cannot be relied upon to even suggest such proof. The only proof which suggests a consideration is that similar orders are issued as advances or donations to employees, their accounts being made with employees on the following Saturday, when weekly settlements are made in cash. There is no proof that a single check itemized in the statement was issued to the person named therein, and there was no proof that labor had been performed by any person named in the itemized statement sued on, hence a complete failure to show any consideration.

In the case of *Ovett Land & Lumber Company* v. *Wimberly,* 109 Miss. 601, 68 So. 855, it was held accord-

ing to the syllabus, sustained by the opinion: "Such checks are invalid as special contracts in the hands of a third party for the reasons: First, the payee or second party to the contract is not stated, and second, no consideration is expressed."

This case further holds according to syllabus: "A trade check, reading 'good for one dollar in merchandise; void if transferred' is not within the law merchant, and cannot be classed, therefore, as negotiable."

Since that case was decided, the legislature has made it clear that the court's conclusion regarding the negotiability of such instruments has proclaimed the public policy of this state.

In paragraph 2, section 1 of chapter 244, page 355, Laws of Mississippi 1916, of our negotiable instrument statute it has been declared that an instrument to be negotiable "must contain an unconditional promise or order to pay a certain sum of money," and this statute was enacted subsequent to the passage of the act relied on by appellant.

Third. The trade check statute most liberally interpreted, does not prohibit the parties from making a special contract that such trade checks may not be transferred. It would simply make them transferable in the absence of any special contract, restricting or prohibiting their transfer.

It is admitted that the appellant knew the infirmity of the order or trade check; that his attention was specifically drawn to the restriction, "Not transferable." The attached coupons are exchangeable for merchandise only at the Kew Mercantile company "if presented by the person to whom this is issued." In other words, appellant knew that Albert Penn had no authority or power to transfer his order for merchandise or trade check, because he knew that he had contracted otherwise with the maker of the check by accepting their check with this restriction and condition embodied in it.

Appellant also knew that it would not be good for
merchandise at the Kew Mercantile Company unless
presented by the person to whom issued, and with knowl-
edge of these facts appellant deliberately forced him-
self, or attempted to force himself into contractual
relations with the Finkbine Lumber Company.

Every contention presented and suggested in the
brief of counsel for the appellant has been completely
answered and destroyed by the Oklahoma supreme court
in the case of *Barringer* v. *Best Line Construction Com-
pany,* — Okla. —, 99 Pac. 775, 21 L. R. A. (N. S.) 597.
In this case the court reviews all other cases dealing
with the subject.

In the case of *Tabler* v. *Sheffield Land, Iron and Coal
Company,* 79 Ala. 377, 58 Am. Reports, 593, the syllabus
reads: ''A 'labor ticket' or certificate for wages, issued
by a corporation and on its face 'payable to employee
only' and 'not transferable' is not assignable.'' The
doctrine announced in this case is approved in *Delaware
County* v. *Diebold Safe & Lock Co.,* 133 U. S. 473, 33 L.
Ed. 674, 10 Sup. Ct. Rep. 399, and in *Burck* v. *Taylor,*
152 U. S. 635, 38 L. Ed. 578, 14 Sup. Ct.; *Omaha* v.
*Standard Oil Co.,* 55 Neb. 337, 75 N. W. 859.

''The supreme court of California, in discussing the
effect upon the common-law rule as to the assignability
of choses in action of code provisions similar to ours,
after referring to the provisions of the Civil Code of
that state which provides that written contracts 'for
the payment of money or personal property' may be
transferred by indorsement, and quoting the following
sections from the statute of that state: 'Sec. 1044,
property of any kind may be transferred except as
otherwise provided by this article.' 'Sec. 1458. A right
arising out of an obligation is the property of the per-
son to whom it is due, and may be transferred as such.'
said: 'These sections seem to do away with whatever
restrictions there may formerly have been upon the

power of the parties to assign their ordinary contracts.

It is clear, however, that the provision cannot be construed to render assignable all contracts whatever, regardless of their nature or effect, but must be taken with some qualifications. *La Rue* v. *Groezinger,* 84 Cal. 282, 18 Am. State Rep. 179, 24 Pac. 43; *State ex rel. Kansas City Loan Guarantee Co.* v. *Kent,* 98 Mo. App. —, 71 S. W. 1066. *Tabler* v. *Sheffield Land, Iron & Coal Co.,* 79 Ala. 377, 58 Am. Rep. 593, is a case in which the facts are very similar to the facts in the case at bar.

We would have an entirely different case to deal with if the employee to whom the merchandise order or trade check was issued, had presented it to the maker for redemption and we would further have an entirely different case to deal with if the employee and the maker had not expressly contracted that the order or trade check could not be assigned; and we would also have a different case to deal with if the appellant had no notice that the parties to the trade check contract had specifically agreed that the same could not be transferred. The court will not try to imagine a case at the invitation of counsel for appellant and apply its decision in that case to a different case here presented. Here we have the assignee of a non-negotiable chose in action, made non-negotiable by its expressed terms, purchasing the chose in action and insisting, contrary to its very language, that it should have been considered negotiable. He took this trade check with his eyes open. He took it in a deliberate attempt to enter into contractual relation with a person who had not expressed any desire to contract with him. The authorities with the exception of the Georgia case, collated and reviewed in the *Barringer case, supra,* sustained the declaration by the supreme court of the United States, "every one has a right to elect and determine with whom he will contract, and cannot have another person thrust upon him without consent. To reverse the judgment in this case

would be to take issue with this practically universal rule.

We respectfully submit that the judgment of the circuit court was entirely proper and should be affirmed.

Cook, J., delivered the opinion of the court.

The appellant, plaintiff in the trial court filed a suit in the justice court to recover upon several trade checks issued in varying amounts by the Finkbine Lumber-Company to its workmen or employees. These trade checks or orders for merchandise had coupons for five and ten cents and were not good if detached. We copy one of the checks, omitting the coupons, viz.:

1.00                        No. 33000A.

Issued to Albert Pin.

Not transferable.

The attached coupons are exchangeable for merchandise only at the Kew Mercantile Company if presented by the person to whom issued.

The plaintiff below, appellant here, relies upon chapter 138, Laws of 1914, being section 4533, Hemingway's Code, for a reversal of this case.

Had it been made to appear that the Finkbine Lumber Company was a manufacturing company, the contention of appellant would be sound. It was not proven that the defendant was a manufacturing company, and consequently the Laws of 1914 do not control the instant case.

Trade checks seem to be *sui generis* and the product of modern times. They have much in common with orders given by farmers to their employees, or share tenants, for merchandise and it is difficult to imagine that an order for a five dollar barrel of flour could be transferred to another person and thereby entitle the transferee to collect from the landlord five dollars in cash. But, as before stated, the appellant relies upon

the Laws of 1914, but has failed to bring his case within the law.

In conference it has been suggested that section 4001, Code of 1906, has made this sort of instrument negotiable and may be transferred by indorsement, and therefore the plaintiff in this case has brought himself within the terms of this statute. The statute means what it says and nothing more. There is nothing in the statute which denies to the payor and payee the privilege of contracting that the promissory note or other writing shall not be transferable, and there is no principle of public policy known to us which condemns the contract made in the present case.

It seems to us that the plan adopted in this case was quite natural, and certainly both parties agreed to the terms of the instrument to which they were parties. This is not a new question, and we here refer to *La Rue* v. *Groezinger,* 84 Cal. 282, 24 Pac. 42, 18 Am. St. Rep. 179. We quote from the syllabi in that case:

"Assignment of Contracts.—The Civil Code of California removes the restrictions formerly existing upon the power of parties to assign their ordinary contracts, though it does not render all contracts assignable regardless of their nature or effect, nor does it render null any agreement or prohibition the parties themselves may have made on the subject."

We believe that the California statute is more restrictive than our statute; but, however that may be, we approve the reasoning in the case referred to.

The parties to the contract in our case made a contract that the trade check was not transferable, and we are of the opinion that the contract was binding on the original parties and all of their assignees.

*Affirmed.*

ETHRIDGE, J.  I dissent from the decision of this case.

The case originated in the justice court and was tried on oral pleadings, and the point as to whether the Finkbine Lumber Company was a manufacturing corporation may have been admitted in the pleadings as it was not raised in the evidence.  The record shows that the attorneys in the court below agreed that it was purely a question of law, and the effort of the plaintiff to show that the trade checks were issued for work done was excluded by the court.

In my opinion, under section 4001, Code of 1906, section 2564, Hemingway's Code, this instrument is assignable, and a careful reading of this section shows, not only that the assignee could bring the suit in his own name, but that all notes and other writings "for the payment of money or other things" may be assigned.  The object of this statute was to make this instrument assignable, and was to enable the assignee to bring suit in his name.

Chapter 138, Laws of 1914, section 4533, Hemingway's Code, provides that trade checks, coupons, or other instruments of writing, in payment for labor, shall on or after the regular pay day, be cashed by the person, firm, or corporation issuing them at their face value, less any amount that may be due by the party to whom issued.  This statute was enacted for a wholesome purpose, to wit, to enable the laborer to take his checks, representing labor done, and trade them to any person, either for cash or supplies;  it being the purpose of the legislature to protect the laborer from the exploitation by profiteering commissaries.  Under the construction adopted by the majority, these concerns may evade the statute by the simple expedient of printing the word "nontransferable" in the check or coupon, and place labor wholly at the mercy of these commissaries, completely nullifying the beneficent statute.